1
2
3
4
5                          UNITED STATES DISTRICT COURT

6                                DISTRICT OF NEVADA

7                                        * * *

8    UNITED STATES OF AMERICA,              Case No. 2:10-cr-00399-MMD-GWF

9                            Plaintiff,
          v.                                                ORDER
10
     PAUL WAGNER,
11
                             Defendant.
12

13   I.    **INTRODUCTION**

14          On October 12, 2012, after trial of approximately two weeks, the jury returned a

15   verdict of guilty on all 12 counts remaining in the Superseding Indictment against

16   Defendant Paul Wagner. (ECF No. 122.) On October 19, 2015, Wagner, proceeding *pro

17   se*,[1] filed a motion for a new trial based on newly discovered evidence, contending that

18   the government failed to disclose *Brady* and *Giglio* materials[2] ("Motion"). (ECF No. 235.)

19   The Court permitted additional briefing, including allowing the government to file a

20   rejoinder and Wagner to file a response to the rejoinder ("Response"). (ECF Nos. 249,

21   258, 260, 268.) For the reasons discussed below, Wagner's Motion is denied.

22   II.   **RELEVANT BACKGROUND**

23          Paul Wagner, a home builder, was indicted on one count of conspiracy to commit

24   bank fraud and wire fraud, thirteen counts of bank fraud and three counts of wire fraud.

25   _____

26   [1]Wagner does not request appointment of counsel. Nor does the Court find that
     counsel should be appointed given the absence of any evidence offered in support of
     Wagner's Motion.
27
     [2]At Wagner's request, the Court extended the deadline for Wagner to file his
28   motion for a new trial. (ECF no. 238.)

(ECF No. 31.) Five counts (counts 8 through 12) were subsequently dismissed pursuant to the government's motion. (ECF No. 119.) The jury convicted Wagner of the remaining 12 counts for conduct that spanned over the course of two years and involved 85 transactions that affected over 30 lenders. The evidence at trial shows that Wagner inflated the value of the homes he built, utilized appraisers who gave false appraisals to support the sales prices, and offered cash incentives and kickbacks using funds from the loan proceeds to entice straw buyers, real estate agents and others to participate in a fraudulent scheme to allow him to sell his inventory of homes. Wagner then concealed these payments from lenders through payment to his Merrill Lynch account outside of escrow and through the use of third party disbursement companies to make mortgage payments on behalf of the straw buyers.

Wagner was indicted on July 28, 2010. (ECF No. 8.) Lawrence Semenza commenced representation of Wagner shortly thereafter on September 8, 2010. (ECF No. 16.) Trial commenced on September 25, 2012. (ECF No. 106.) The jury returned a guilty verdict on October 12, 2012. (ECF No. 122.) The Court granted substitution of counsel, terminating Semenza's representation of Wagner on January 1, 2013, before Wagner was sentenced. (ECF No. 142.) Judgment was entered on July 30, 2013. (ECF No. 169.)

Wagner seeks a new trial under Fed. R. Crim. P. 33(b)(1), discovery and an evidentiary hearing. (ECF No. 235.) The gist of Wagner's argument is that he has recently discovered new evidence that the government had failed to disclose in violation of its obligations under *Brady* and *Giglio*.

III.    **LEGAL STANDARDS**

   A.    **Motion for a New Trial**

Pursuant to Federal Rule of Criminal Procedure 33(a), "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Rule 33(b) limits the ground of a motion for a new trial filed after 14 days but within 3 years to newly discovered evidence. The Ninth Circuit Court of Appeals in

*United States v Harrington,* 410 F.3d 598, 601 (9th Cir. 2005), reiterated a five-part legal test to examine a motion for a new trial grounded on newly discovered evidence. *See also United States v. Hinkson,* 585 F.3d 1247, 1264 (9th Cir. 2009) (en banc). Under that test, a defendant is required to show that "(1) the evidence must be newly discovered; (2) the failure to discover the evidence sooner must not be the result of a lack of diligence on the defendant's part; (3) the evidence must be material to the issues at trial; (4) the evidence must be neither cumulative nor merely impeaching; and (5) the evidence must indicate that a new trial would probably result in acquittal." *Harrington,* 585 F.3d at 601 (quoting *United States v. Kulczyk,* 931 F.2d 542, 548 (9th Cir. 1991).

It is well established that "a defendant seeking a new trial on the basis of newly discovered evidence must show that 'the evidence relied on is, in fact, newly discovered, i.e., discovered after the trial." *United States v. McKinney,* 952 F.2d 333, 335 (9th Cir. 1991) (quoting *Pitts v. United States,* 263 F.2d 808, 810 (9th Cir.), *cert. denied,* 360 U.S. 919, (1959). Evidence that could have been obtained at any time or that was disclosed during trial does not satisfy the first factor of the *Harrington* five-factor test. *See Harrington*, 410 F.3d at 601 (finding that "photographs and street map [that] could have been obtained at any time" and testimony at a preliminary hearing that were captured on tape which could have been obtained by counsel during trial are not "newly discovered evidence").

### B.    The Government's Obligations under *Brady* and *Giglio*

"[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Under *Brady,* a prosecutor must disclose evidence that is "material either to guilt or to punishment." *Id.* In *Giglio v. United States*, the Supreme Court extended *Brady*'s disclosure requirement to evidence that may impeach a government witness. *Giglio,* 405 U.S. 150 (1972). A defendant asserting a *Brady/Giglio* violation must satisfy three requirements: "(1) the evidence at issue must be favorable to

the accused, either because it is exculpatory, or because it is impeaching; (2) that evidence must have been suppressed by the State, either willfully or inadvertently; and (3) prejudice must have ensued." *United States v. Williams,* 547 F.3d 1187, 1202 (9th Cir.2008) (quoting *Strickler v. Greene,* 527 U.S. 263, 281–82, (1999) (internal quotation marks omitted)).

## IV.   DISCUSSION

Wagner argues that the government failed to disclose the following evidence in violation of its obligations under *Brady/Giglio*: (1) an email dated August 25, 2009, from Alicia Hanna to Federal Bureau of Investigation Agent Mike Rawlins where Hanna indicated she "would love to come work with you guys" ("the Email"); (2) Dennis Morales' criminal history and agreement to cooperate with the government; and (3) the fact that Roma Nelson was an undercover agent reporting to Rawlins and she had copied documents from Wagner's files for the FBI before she quit her job with his company, Wagner Homes (ECF No. 235.) Wagner further argues that the government failed to disclose that his counsel, Lawrence Semenza, was being investigated for tax evasion during the time of Wagner's trial. In his reply brief, Wagner added that the government failed to disclose to the jury the "truth character" of witnesses such as Pachinger and Weissbuch who were "de facto government agent[s]"; and failed to disclose that Beverly Antonio, who was presented as an "independent and unbiased witness," had been a cooperating witness and was "inserted into Wagner's business" by the FBI to set him up, and concealed Antonio's past fraudulent conduct. (ECF No. 235 at 8-15.)

As an initial matter, the Court agrees with the government that several of the arguments raised in Wagner's reply and Response are not relevant to the single ground supporting his Motion — his contention that newly discovered evidence shows the government failed to comply with its *Brady/Giglio* obligations. For example, Wagner contends that the government "glossed over Mr. Morales's considerable criminal history and left the jury with a small but nevertheless damaging implication of Paul Wagner's propensity to use fraudulent means to obtain financing for the purchasers of his homes."

(ECF No. 268 at 8.) Another example is Wagner's contention that the government failed to provide notice of its intent to introduce testimonies of Russell Pachinger and Joshua Weissbuch about their roles in the fraudulent scheme. (ECF No. 258 at 8.) These arguments may raise issues relating to Wagner's direct appeal, but they are not pertinent to Wagner's contention that the government failed to disclose exculpatory evidence or impeachment evidence in violation of *Brady/Giglio*. The Court will therefore not address these ancillary irrelevant arguments. The Court will instead focus on Wagner's contention that the government failed to disclose material information relating to certain witnesses and his counsel.

### 1.  Alicia Hanna

While Wagner's Motion contends that the government failed to disclose the Email, Wagner acknowledges in his Response that the Email was disclosed.[3] (ECF No. 268 at 3.) However, Wagner argues that the government had an obligation to highlight the Email when producing it during discovery. Wagner offers no authority to support his argument that the government has an obligation to point out certain discovery documents as more important than others. Moreover, the government has demonstrated that the Email was produced as part of a group of other emails in .pdf format that was searchable with commercially available software and was not buried among dissimilar documents. (ECF No. 260 at 2-3; ECF No. 260-2.) Wagner has failed to show that the government violated its obligations under *Giglio* in the manner in which the Email was produced in discovery.

### 2.  Dennis Morales

Wagner contends the government failed to disclose that Morales had a criminal history, that his appraisal license had been revoked in April 2005, that he had an agreement to act as an agent of the FBI, that he was fitted with a wire to record

///

---

[3]In its response, the government offered evidence that the Email was produced in discovery three months before trial. (ECF No. 249-1 at 2-4.)

conversations with Wagner and others such as Mark Gonzales,[4] and that he had provided information concerning another builder named Mr. Virgil. (ECF No. 235 at 3, 9-10.) The government counters that it disclosed (1) information about Morales' criminal history and uncharged conduct (ECF No. 249-1 at 17-18; ECF No. 249-2 at 2-7, 13-17; ECF No. 249-3 at 2-13, 21-27); (2) information that Morales had cheated his former employer and had relinquished his appraisal license in 2005 (ECF No. 249-2 at 2); (3) the existence of recordings between Morales and Gonzales in the March 23, 2012, letter, but that letter does not identify recordings between Morales and Wagner or Morales and others as Wagner claims in his Motion (ECF No.-249 at 5; ECF No. 249-3 at 15-19); (4) Morales' plea agreement which contained a non-prosecution agreement (ECF No. 249-4 at 2-15.); and (5) information that Morales provided about a mortgage broker named Ernest Vigil, but not about a builder name Mr. Virgil, because Morales did not provide any such information. (ECF No. 249-1 at 17-18; ECF No. 249-2 at 3-7, 16-17.) The government denies that it had any secret agreement with Morales for him to act as the government's agent as Wagner claims, and Wagner fails to offer any evidence supporting his claim of a such an agreement.

The Court agrees with the government that Wagner has failed to offer any evidence to support his allegation that the government failed to disclose the claimed materials relating to Morales.

### 3.   Roma Nelson

Wagner argues that the government failed to disclose that Nelson was an undercover government agent. In particular, he claims that he recently learned of a previous interview where Nelson had agreed to work as an undercover agent and that

---

[4]Wagner cites to the government's list of recordings dated March 23, 2012, as support. (ECF No. 235 at 9.) However, it is not clear from the list that the government failed to produce these recordings during discovery in this case or that the list identified recordings of conversations with Wagner. In fact, the government cites to the March 23, 2012, letter as support that it disclosed recordings between Morales and Gonzales, and that the letter does not identify recordings between Morales and Wagner or between Morales and others as Wagner contends. (ECF No. 249 at 5.)

1    she had made copies of his files and faxed them to Rawlins. (ECF No. 235 at 10.) In

2    support of his suggestion that Nelson had surreptitiously copied documents from his files

3    for the government in violation of his Fourth Amendment rights, Wagner points to the fact

4    that recently obtained documents copied from his private files contain the Wagner

5    Homes fax number as the sender and Rawlins' fax number as the recipient, in addition to

6    the fact that Wagner had discovered that his office copier had burnt out and "the meter

7    copies appeared to jump by +/- 2000 copies" a few days before Nelson quit her job,

8    though she professed to have no knowledge of either issue. (ECF No. 235 at 10.)

9    Wagner does not offer any information to substantiate his claim that Nelson had

10   purportedly copied documents and faxed them to Rawlins, or that she had any contact

11   with Rawlins while she worked for his company. Wagner's reply brief referenced an

12   "Exhibit 'A' first attached to the declaration of" Wagner showing the fax numbers of

13   Rawlins and Wagner's office (ECF No. 258 at 6), but no such document was attached to

14   the reply brief or to Wagner's declaration filed as part of Exhibit A (*id.* at 20-22), or to

15   Wagner's declaration intended to be attached with his Motion but actually filed on

16   November 6, 2015 (ECF No. 240). In his Response, Wagner offered a copy of a letter

17   signed by him dated May 26, 2009, which contains a fax number on the upper right hand

18   corner, although it is not evident from the document whether the fax number was that of

19   the sender or of the recipient, and the date of the fax is not legible. (ECF No. 268 at 12.)

20   The document contains a handwritten notation that the fax number is that of Rawlins,

21   although it is not clear who authored the handwritten note and whether the note is

22   accurate. It also appears that the letter was originally faxed on May 26, 2009, at 12:14

23   p.m. by means of an "HP Laserjet Fax" as noted on the letter to the upper left of the

24   Wagner Homes logo. The Court cannot find that this document contains the information

25   Wagner claims to be self-evident — that the document was faxed from Wagner Homes

26   to Rawlins before Nelson's employment termination from Wagner Homes in June 2009,

27   let alone that it was Nelson who faxed the document.

28   ///

The government denies that Nelson copied any documents for the FBI or that Rawlins had any contact with Nelson before she quit working for Wagner Homes in June 2009, which was over a year before her first contact with the FBI. (ECF No. 249 at 7.) The government further demonstrates that Nelson had been interviewed three times by Rawlins, and all three 302s of these interviews were disclosed in discovery. (*Id.* at 8.) Wagner does not dispute this fact or offer support for his claim of a prior undisclosed interview as alleged in his reply brief. (ECF No. 258 at 6-7.) Instead, Wagner offered an excerpt of a recording of a conversation between Pachinger and Nelson in the summer of 2009 where Nelson said that Rawlins "used to call the office" and "would always ask where is Paul." (ECF No. 258 at 7.) However, such comments at best show Rawlins would call Wagner Homes looking for Wagner, not that he had interviewed or contacted Nelson to act as a government agent.

Wagner fails to offer any evidence to support his contention that the government failed to disclose that Nelson was an agent of the government while she was employed with Wagner Homes.

### 4.    Other Witnesses

In his reply brief, Wagner argues for the first time that the government also failed to disclose information showing the "truth character" of several important witnesses to the jury, including the fact that they were alleged de facto agents or cooperating with the government. (ECF No. 258 at 7-15.) However, as the government correctly pointed out, *Brady* and *Giglio* do not impose an obligation on the government to disclose information to the jury. In his Response, Wagner clarified that his argument is that the government failed to disclose to the jury that these witnesses were de facto agents of the government, and not as portrayed to be "unbiased independently minded witnesses." (ECF No. 268 at 6.)

Here again Wagner fails to offer any evidence to support his claim that Pachinger and Weissbuch were de facto government agents. Instead, Wagner explains that an attorney he had consulted with when he was informed by Rawlins that he was a target of

an FBI investigation suggested that some people Wagner had dealt with were undercover agents or informants, but he has essentially not been able to obtain information "as to which 'neutral witnesses' were actually undercover agents" and seeks discovery and an evidentiary hearing to try to obtain this information. (ECF No. 240 at 2, 6.) The government also points out that evidence of the cooperation provided by Pachinger and Weissbuch, including FBI 302s of interviews, their plea agreements and recordings, were produced in discovery. (ECF No. 260 at 4.)

Wagner does not offer any evidence to support his contentions with respect to Antonio — that the government concealed her past fraudulent conduct and recruited her to set up Wagner. (ECF No. 258 at 14-15.) In his Response, Wagner appears to clarify that his contention is the government should have pointed out during Antonio's testimony that she had participated in other fraudulent schemes, not that the government failed to disclose these other bad acts during discovery. (ECF No. 268 at 5.) Indeed, two of the exhibits that Wagner relies upon — Exhibits C and D — appear to be excerpts from a 302s for Antonio. (*Id.* at 16-18.) Again, *Brady* and *Giglio* do not impose an obligation on the government to disclose information to the jury. Moreover, on cross-examination, Antonio testified about some of the issues identified in Exhibits C and D, including her shredding of documents involving cash-back payments when National Alliance Title closed, creation of double escrows or double HUDs to conceal down payment assistance for one mortgage broker (John Vidaurri), creation of sub-escrow accounts when she was with Direct Title, and dealings with Anthony Horowitz. (ECF No. 150 at 67-84.) Antonio also testified on direct that she was prosecuted for conspiracy to commit mortgage fraud involving Wagner Homes and The Carpenter's Fund, sentenced to five years of probation over the government's objection and ordered to pay restitution and forfeiture.[5] (ECF No. 149 at 8-13.)  Thus, even Wagner's contention that the jury was not ///

[5]Exhibit B to the Response appears to be a copy of the Judgment from that criminal case before The Honorable Philip Pro. (ECF No. 268 at 14.)

1   presented with Antonio's past fraudulent conduct is belied by the transcript of Antonio's

2   trial testimony.

3         The Court agrees with the government that Wagner has failed to offer any

4   evidence to support his contention that Pachinger, Weissbuch and Antonio were de facto

5   government agents and that Antonio had engaged in transactions with Wagner Homes

6   at the FBI's direction to entrap Wagner.

7        **5.**    **Lawrence Semenza**

8         Wagner contends the government violated its *Brady* obligations by failing to

9   disclose that Semenza had an actual conflict in that Semenza was "under indictment for

10  tax evasion during the time of the Wagner trial, and was negotiating a disposition with

11  the AUSA."[6] (ECF No. 235 at 12.) Wagner reasons that as a result of the government's

12  *Brady* violation, he was represented by conflict counsel in violation of his Sixth

13  Amendment rights. (*Id.*)

14        The government responds that Semenza was not being investigated by the U.S.

15  Attorney for the District of Nevada ("the Nevada U.S. Attorney's Office") during the

16  course of the trial in this case, and the Nevada U.S. Attorney's Office only learned of the

17  criminal investigation involving Semenza when the matter was referred to it by the Tax

18  Division of the United States Department of Justice ("DOJ Tax Division") on February 6,

19  2013, for prosecution ("the Referral Letter"). (ECF No. 249 at 8-9.) Wagner counters that

20  because the Referral Letter referenced a letter dated October 25, 2012, criminal

21  investigation into Semenza had been conducted and completed "sufficiently to enable

22  the special agent in charge[] to recommend prosecution of Semenza within 13 days of

23  Wagner's trial." (ECF No. 258 at 2.) This may be true. However, the October 25, 2012,

24  letter is from the Special Agent in Charge of the Las Vegas Field Office of the Criminal

25  Division of the Internal Revenue Service to the Assistant Attorney General for the DOJ

26

27          [6]On August 28, 2014, Semenza waived indictment and pled guilty to three counts
of failure to file a tax return for the 2007-2009 calendar years. *See United States v.*

28  *Semenza,* Case No. 2:14-cr-00271-JCM-PAL (ECF Nos. 2, 5, 6).

Tax Division, not the Nevada U.S. Attorney's Office. (ECF No. 260-1) That letter does not show that the Nevada U.S. Attorney's Office knew of the criminal investigation involving Semenza. The government represents that the Nevada U.S. Attorney's Office was not aware of the criminal investigation involving Semenza until the it received the Referral Letter, which was about three months after the trial and a month after Semenza's representation of Wagner terminated. Accordingly, the government argues that the Nevada U.S. Attorney's Office did not violate any obligations to disclose any conflict, or that Semenza had an actual conflict. (ECF No. 260 at 1-2.)

First and foremost, to the extent Wagner asserts that the newly discovered evidence relates to Semenza's criminal investigation which rendered him ineffective in representing Wagner, Wagner cannot rely on such evidence to support his Motion.[7] In *United States v. Hanoum,* the Ninth Circuit Court of Appeals held that "a Rule 33 motion based upon 'newly discovered evidence' is limited to where the newly discovered evidence relates to the elements of the crime charged. Newly discovered evidence of ineffective assistance of counsel does not directly fit the requirements that the evidence be material to the issues involved, and indicate that a new trial probably would produce an acquittal." *Hanoum,* 33 F.3d 1128, 1130 (9th Cir. 1994). Thus, the fact that Semenza was being criminally investigated by the IRS during Wagner's trial is not evidence relating to any of the counts in this case to meet the first part of the *Harrington* five-factor test.

Moreover, Wagner offers no evidence that the Nevada U.S. Attorney's Office knew of the IRS's criminal investigation relating to Semenza during the course of Semenza's representation of Wagner. To the contrary, the government has offered evidence that the Nevada U.S. Attorney's Office who prosecuted Wagner was not aware

---

[7]The Court does not reach the legal question of whether disclosure of the criminal investigation relating to Semenza falls within the government's obligations under *Brady* and *Giglio.* Wagner also suggests that Semenza should have disclosed his conflict — that he was being criminally investigated by the IRS. (ECF No. 268 at 2-3.) But Semenza's ethical duties cannot be imputed to the government.

1  of any such criminal investigation until the criminal matter was referred for local

2  prosecution in February 2013 when Semenza no longer representing Wagner. Thus, the

3  Nevada U.S. Attorney's Office cannot violate a duty to disclose a potential conflict of

4  which it had no actual knowledge.[8]

5  ## V.   CONCLUSION

6  The Court notes that the parties made several arguments and cited to several

7  cases not discussed above. The Court has reviewed these arguments and cases and

8  determines that they do not warrant discussion as they do not affect the outcome of the

9  Motion.

10  Wagner fails to offer any evidence to support his contention that the government

11  violated its duty under *Brady* and *Giglio* to disclose material information. Accordingly, the

12  Court denies Wagner's motion for a new trial, as well as Wagner's request for discovery

13  and an evidentiary hearing.

14  It is therefore ordered that Paul Wagner's motion for a new trial (ECF No. 235) is

15  denied.

16  DATED THIS 26th day of January 2017.

17

18  _____

19  MIRANDA M. DU
    UNITED STATES DISTRICT JUDGE

20

---

21  [8]The government also relies on *United States v. Baker,* 256 F.3d 855, 859 (9th Cir. 2001), to argue that Wagner fails to show an actual conflict existed because

22  Semenza was not under criminal investigation by the Nevada U.S. Attorney's Office who prosecuted Wagner. (ECF No. 260 at 2.) In *Baker,* the court reiterated that to

23  demonstrate ineffective assistance of counsel, a defendant "must show 'that an actual conflict of interest adversely affected his lawyer's performance[,]'" and "not the mere

24  possibility of conflict." *Id.* at 860 (quoting *United States v Moore,* 159 F.3d 1154, 1157 (9th Cir. 1998). The court found that Baker failed to make this showing of an actual

25  conflict of interest because while representing him in in connection with a conviction and an appeal in the Central District of California, Baker's counsel was under investigation

26  and cooperated with the United States Attorney in the Southern District of New York and earning a downward departure for substantial assistance. The Court does not reach the

27  issue of whether Wagner has made a showing of ineffective assistance of counsel since the issue cannot be raised in a motion for a new trial under Rule 33(b). *See Hanoum,* 33

28  F.3d at 1130.