UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| UNITED STATES OF AMERICA, | Case No. 2:10-cr-00399-MMD-GWF |
|---|---|
| Plaintiff, | Related Case: 2:19-cv-01540-MMD |
| v. | ORDER |
| PAUL WAGNER, *et al.*, | |
| Defendant. | |

**I.  SUMMARY**

On October 12, 2012, after trial of approximately two weeks, the jury returned a verdict of guilty on all 12 counts remaining in the Superseding Indictment against Defendant Paul Wagner. (ECF No. 122.) The Court later sentenced him. (ECF Nos. 162, 164.) Before the Court is Wagner's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. (ECF Nos. 322, 333 (collectively, the "Motion")[1].) Primarily because he has not shown prejudice under *Strickland v. Washington,* 466 U.S. 668 (1984), and as further explained below, the Court will deny the Motion.

**II.  BACKGROUND**

The Court incorporates by reference the relevant background it provided in its prior order denying Wagner's motion for a new trial. (ECF No. 271 at 1-2 ("New Trial Order").) Wagner appealed several months after the Court issued the New Trial Order. (ECF No.

---

[1]Wagner filed his motion *pro se* (ECF No. 322), and the Court later appointed him counsel for purposes of his Section 2255 motion (ECF No. 324). The Court gave Wagner's appointed counsel the option to file a new Section 2255 motion. (ECF No. 325.) Wagner's appointed counsel decided to file a new motion to vacate. (ECF No. 333.) The Court accordingly refers to ECF No. 333 throughout this order. The government filed a response. (ECF No. 335.) Wagner filed a reply (ECF No. 354), and a supplement to that reply (ECF No. 355). The Court later gave Wagner's most-recently-appointed counsel an opportunity to file an amended motion or give notice that no additional claims will be raised (ECF No. 359) and then two extensions of time on that order (ECF No. 361, 365), but Wagner's counsel ultimately decided not to raise any additional claims (ECF No. 366). Thus, the Motion became fully briefed on May 5, 2022. (*Id.*)

272.) For that reason, the Court denied Wagner's motion to reconsider the New Trial Order. (ECF No. 281.)

The United States Court of Appeals for the Ninth Circuit affirmed Wagner's conviction and the Court's sentence. (ECF No. 300 at 1-2.) The Ninth Circuit also affirmed the Court's decision in the New Trial Order to deny Wagner's motion for a new trial. (*Id.* at 4.) However, the Ninth Circuit noted at the conclusion of its Memorandum Disposition, "Wagner's assertions regarding a failure to disclose his trial counsel's alleged conflict of interest, and counsel's ineffective assistance, are more appropriately the subject of a motion under 28 U.S.C. § 2255." (*Id.* (citation omitted).) Thus, the Ninth Circuit did not address those arguments. And, indeed, those are the arguments Wagner raises in his Motion.

### III.     LEGAL STANDARD

A federal prisoner may seek relief under 28 U.S.C. § 2255 if: 1) "the sentence was imposed in violation of the Constitution or laws of the United States;" 2) "the court was without jurisdiction to impose such sentence;" 3) "the sentence was in excess of the maximum authorized by law;" 4) the sentence is "otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Wagner specifically moves for relief under Section 2255 because he argues his trial counsel was ineffective. (ECF No. 333 at 14-21.) And indeed, "the customary procedure in this Circuit for challenging the effectiveness of defense counsel in a federal criminal trial is by collateral attack on the conviction under 28 U.S.C. § 2255[.]" *United States v. Schaflander*, 743 F.2d 714, 717 (9th Cir. 1984) (citation omitted).

"[T]he right to counsel is the right to effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). Ineffective assistance of counsel claims are governed by the two-part test announced in *Strickland,* 466 U.S. 668. In *Strickland*, the Supreme Court held that a petitioner claiming ineffective assistance of counsel has the burden of demonstrating that: (1) counsel's performance was unreasonably deficient; and (2) that the deficient performance prejudiced the defense. *See Williams v. Taylor,* 529 U.S. 362, 390-91 (2000) (*citing Strickland,* 466 U.S. at 687). To establish ineffectiveness,

the petitioner must show that counsel's representation fell below an objective standard of reasonableness. *See id.* To establish prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *See id.* A reasonable probability is "probability sufficient to undermine confidence in the outcome." *Id.* Further, *Strickland* requires a showing of deficient performance of counsel resulting in prejudice, "with performance being measured against an objective standard of reasonableness, . . . under prevailing professional norms." *Rompilla v. Beard,* 545 U.S. 374, 380 (2005) (internal quotation marks and citations omitted). Additionally, any review of the attorney's performance must be "highly deferential" and must adopt counsel's perspective at the time of the challenged conduct, in order to avoid the distorting effects of hindsight. *See Strickland,* 466 U.S. at 689. It is the petitioner's burden to overcome the presumption that counsel's actions might be considered sound trial strategy. *See id.*

## IV.   DISCUSSION

Wagner argues his trial counsel was ineffective in six different ways and argues his trial counsel had a conflict of interest because he was under investigation for tax fraud during his representation of Wagner. (ECF No. 333 at 17-21.) The Court addresses below each of Wagner's six asserted grounds for his ineffective assistance of counsel claim after first addressing and rejecting his argument based on his trial counsel's purported conflict of interest. (*Id.* at 20.) The Court has already addressed in detail and rejected Wagner's conflict of interest argument. (ECF No. 271 at 10-12.) The Court denied reconsideration of that decision as well. (ECF No. 281.) The Court rejects Wagner's conflict of interest argument for the same reasons it already rejected it. (ECF Nos. 271 at 10-12, 281.)

As a further preliminary matter, the Court declines to hold a hearing on the Motion[2] because it finds that "the files and records of the case conclusively show that the prisoner

---

[2] Wagner does not explicitly ask for a hearing but perhaps suggests that the Court should hold a hearing on the Motion in reciting the legal standard applicable to his Motion by italicizing a word in quote. (ECF No. 333 at 15.)

is entitled to no relief[.]" 22 U.S.C. § 2255(b). As mentioned, the Court now turns to the six ineffective assistance of counsel grounds Wagner raises in his Motion.

### A. Ground 1 – Failure to Investigate

Wagner first argues his trial counsel was ineffective because he failed to interview witnesses, put on Larae Obenauf or Pastor Hauley as witnesses to impeach the testimony of Roma Nelson, or cross-examine witnesses Nelson and Alicia Hanna during trial, along with failing to make use of some purportedly exculpatory evidence within the discovery provided by the government. (ECF No. 333 at 17-18.) The government counters that none of these allegations show prejudice because there was overwhelming evidence of Wagner's guilt at trial from other sources. (ECF No. 335 at 14-15.) As pertinent to the prejudice prong of the *Strickland* ineffective-assistance of counsel analysis, Wagner replies that Nelson could have been cross-examined about other times she forged Wagner's signature, and Hanna could have been cross-examined about an email tending to show bias on her part, which would have rendered them less credible in the jury's eyes and thus the results of the trial likely would have been different.[3] (ECF No. 354 at 7-11.) The Court agrees with the government.

It is unlikely that the Court would have permitted Wagner's trial counsel to put on Obenauf or Pastor Hauley as witnesses, and unlikely that the jury would have returned a not guilty verdict if Wagner's trial counsel cross-examined Nelson or Hanna with evidence

---

[3] Wagner further replies that his trial counsel did not call other witnesses, most notably James Pengilly, but that argument mostly goes to deficiencies in Wagner's trial counsel's performance. (ECF No. 354 at 11-15.) And the government does not really dispute that Wagner's trial counsel's performance was unreasonably deficient. (*See generally* ECF No. 335.) Thus, much of Wagner's argument regarding his trial counsel's failure to call Pengilly has little impact on the Court's analysis of this ground because the Court focuses on the real dispute between the parties: the prejudice prong. As to prejudice, Wagner replies that, "[i]nvestigating and presenting available witnesses would have subjected the Government's case to the requisite scrutiny and would have rebutted the Government's evidence." (ECF No. 354 at 14.) But Wagner does not explain how this would have been the case, making his prejudice argument a merely conclusory assertion. And the Court is unconvinced it would have let Pengilly, an attorney, testify as to his opinion that Wagner "did not commit any of the crimes he was convicted of" in any event, as such testimony would have invaded the province of the Court, responsible for instructing the jury on the law, and that of the jury who ultimately reached a contrary conclusion to the opinion Pengilly states his willingness to testify to. (ECF Nos. 122 (jury verdict), 355-1 at 1 (Pengilly's declaration).)

4

tending to show she forged Wagner's signature to cash checks at casinos reflecting money she embezzled from Wagner (as to Nelson) or wrote that she would be open to a job with the Federal Bureau of Investigation ("FBI") (as to Hanna). As the government argues, the government put on ample other evidence of Wagner's guilt from witnesses beyond Nelson and Hanna. (ECF No. 335 at 14 (referring to trial testimony from an appraiser, a lender, and an employee of a servicing company)), along with documents tending to evidence Wagner's guilt merely authenticated by Nelson (*id.* (referring to second sets of documents not to be shown to the lender).) Thus, it is unlikely the result would have been different if Wagner's trial counsel cross-examined Nelson or Hanna. And Wagner's reply does not discuss this other evidence, rendering his pertinent argument more unpersuasive than it would have been had he discussed it. (ECF No. 354 at 7-15.)

As to Obenauf and Pastor Hauley specifically, Wagner initially argues they could have testified that Nelson forged Wagner's signature on a series of payroll checks (ECF No. 333 at 17-18), but in response to the government pointing out such testimony would have likely been precluded by Fed. R. Evid. 608(b) (ECF No. 335 at 14-15), Wagner shifts to merely argue that the Court may have allowed evidence to come in tending to show Nelson was untruthful under cross-examination (ECF No. 354 at 9-10). Wagner therefore effectively abandons his argument that his trial counsel should have called Obenauf and Pastor Hauley as witnesses and is now arguing instead that his trial counsel should have cross-examined Nelson to show she tended to be untruthful and was biased towards the prosecution. (*Id.*) According to Wagner, Nelson's alleged bias would have come into play, "if Ms. Nelson believed, for any reason, that cooperating with the prosecution would make it so that she would not be held responsible for her past actions[.]" (*Id.* at 10.) But Wagner does not take the next logical step and proffer any argument or evidence to show that Nelson believed she would not be held responsible for her past actions.

///

///

1    Nor does Wagner proffer any evidence that Nelson incorrectly identified his
2    signature or was untruthful in most of the testimony she offered.[4] Thus, even if the jury
3    believed Nelson had been untruthful in some respects, they still could have believed her
4    testimony authenticating Wagner's signature. *See, e.g.*, Ninth Circuit Committee on
5    Model Criminal Jury Instructions, *3.9 Credibility of Witnesses*, Manual of Model Criminal
6    Jury Instruction for the District Courts of the Ninth Circuit (2017),
7    https://www.ce9.uscourts.gov/jury-instructions/node/343 ("if you think the witness
8    testified untruthfully about some things but told the truth about others, you may accept
9    the part you think is true and ignore the rest."). In any event, even if the jury chose to
10   believe nothing that Nelson said, there was ample other evidence upon which they could
11   have rested their conviction of Wagner.
12       As to Hanna, Wagner's whole argument is that his trial counsel should have
13   questioned her about the following email thread (ECF No. 333 at 11, 17-18):

```
From:       Alicia Hanna
To:         Rawlins, Michael E.
Sent:       8/25/2009 6:38:52 PM
Subject:    Re:

You never know where I might land Mike...our paths may cross again! I would love to come work with you guys so
keep your eyes open for openings in the Charlotte field office for doc analysts!

I left Kristine a message with the info that we discussed. I will let you know when she has had an opportunity to
review and what she finds that may be of hel.!

Thanks,
Alicia

On Tue, Aug 25, 2009 at 5:59 PM, Rawlins, Michael E. <Michael.Rawlins@ic.fbi.gov> wrote:
Hi Alicia,
It was good talking with you today. Sorry to lose you as a contact.
Thanks for all the help,
Mike
```

---

[4] Indeed, Obenauf's declaration does not challenge Nelson's authentication of Wagner's signature at trial. (ECF No. 333-16.)

(ECF No. 333-15 at 1.)[5] Wagner argues his trial counsel could have used this email thread to discredit Hanna. (ECF No. 333 at 20.) But the Court does not find this email necessarily discredits Hanna, much less that questioning her about it would have changed the outcome of the trial. While this email could indicate that Hanna was seeking employment with the FBI, it could just as easily be a friendly response. "I would love to" and "keep an eye out" does not indicate Hanna had, for example, filled out a job application. Said otherwise, she could basically be saying 'I enjoyed working with you as a contact' in an effusive way.

And even if this email showed that Hanna was biased toward the prosecution because she was interested in working for the FBI, it does not mean the jury would have found her testimony entirely incredible. Further, even if the jury found Hanna's testimony entirely incredible, that still does not mean the jury would have reached a different result. As noted *supra*, there was ample other evidence of Wagner's guilt beyond Hanna and Nelson's testimony. And as particularly pertinent to Hanna, other witnesses offered testimony similar to hers. (ECF No. 335 at 6 n.5 (citing ECF No. 212 at 19-21, 28-30, 45-48, 83).) Thus, the Court does not find a reasonable probability that the result of Wagner's trial would have been different if Wagner's trial counsel had questioned Hanna about this email either before or during trial.

### B.     Ground 2 – Failure to Review Discovery

Wagner next argues his trial counsel was ineffective under *Strickland* because he never reviewed most of the discovery and was unfamiliar with it based on his performance at trial. (ECF No. 333 at 18.) The government counters that Wagner does not identify any exculpatory information within that discovery not already addressed above, and that a defendant must do more to show prejudice than speculate that his trial attorney might have achieved a better result had he done this or that. (ECF No. 335 at 15-16.) Indeed, the government points out that Wagner fails to describe any material his trial counsel was

---

[5] Wagner previously relied on this email to argue for a *Brady/Giglio* violation, but the Court found in the New Trial Order there was no violation because the government had disclosed the email. (ECF No. 271 at 4-5.)

unfamiliar with, much less explain how that material resulted in prejudice. (*Id.* at 16.) And Wagner does not specifically raise this argument again in his reply, instead focusing on the other grounds raised in his Motion. (ECF No. 354.) The Court again agrees with the government.

To the extent Wagner has not abandoned this argument, the Court finds Wagner has not shown prejudice under *Strickland* as to any discovery his trial counsel did not review. Wagner does not identify any specific discovery not already discussed *supra* that his counsel should have reviewed but did not, much less explain how any failure to review discovery could establish the requisite prejudice under *Strickland*.

### C. Ground 3 – Failure to Hire Experts

Wagner also argues his trial counsel was ineffective because he failed to hire most of the experts he belatedly obtained Criminal Justice Act ("CJA") funding for. (ECF No. 333 at 18.) The government characterizes this argument as unjustifiably prioritizing form over substance because Wagner does not offer any specific information about what these experts would have testified to or explain how their testimony would have aided his defense. (ECF No. 335 at 16.) As to prejudice, Wagner replies with substantially the same argument he raises in his Motion, "[t]his created prejudice against Mr. Wagner because had witnesses been investigated and called to testify, he could have had an adequate defense and the results from trial could have been different." (ECF No. 354 at 14; *see also* ECF No. 333 at 20.) The Court again agrees with the government.

Wagner's conclusory and speculative argument on this ground does not establish a "probability sufficient to undermine confidence in the outcome." *Williams,* 529 U.S. at 391 (citation omitted). Wagner does not proffer, for example, any declarations from computer or accounting experts who would have been willing to testify in a way that created reasonable doubt as to the presentations of the government's experts or the elements of the crimes Wagner was charged with. Indeed, Wagner does not offer any specific descriptions of what the experts his trial counsel did not hire may have testified to. Based on Wagner's Motion, his reply, and the supporting exhibits, it is simply not

possible to say that the outcome of the trial may have been different if his trial counsel had hired the experts he obtained funding to retain.

### D. Ground 4 – Decision to Hire Novy

Wagner next argues his trial counsel should have hired a better expert than the one he did hire—Novy—because Judge Hunt had previously barred Novy from ever appearing before him as an expert in mortgage fraud cases again, in a trial that Wagner's trial counsel also worked on. (ECF No. 333 at 18.) But Wagner notes that Novy never testified at his trial in any event, so trial counsel's decision to hire Novy cannot have influenced the verdict. (*Id.*) To the extent Wagner is arguing trial counsel should have hired better experts than Novy, the Court rejects that argument for the same reasons provided *supra* in Section IV.C.

### E. Ground 5 – Perfunctory Performance

Wagner also generally argues that his trial counsel's performance at trial was deficient, because, for example, he violated a court order to provide a timely exhibit list and thus had certain exhibits he wished to rely on at trial excluded. (*Id.*) Wagner also proffers a declaration from his trial counsel along with his Motion, in which Wagner's trial counsel states that he was forced to go to trial unprepared and therefore provided an inadequate defense. (ECF No. 333-13.) As to prejudice, Wagner's trial counsel states that it is his, "good faith belief that had I had the support requested and been given adequate time to complete the investigation prior to trial of [sic] there is a reasonable probability that the result of the trial would have been different." (*Id.* at 4-5.) The government counters that Wagner's trial counsel's views about his own performance are irrelevant to the required, objective inquiry necessary under *Strickland*, that Wagner's trial counsel's statements in his declaration are either uncorroborated or contradicted by the declaration filed by his investigator (ECF No. 333-3) and are otherwise vague and conclusory. (ECF No. 335 at 17-18, 17 n.8.) The government further argues that Wagner has not shown that any of his trial counsel's errors had an effect on the verdict. (*Id.* at 17-18.) As to prejudice, Wagner again merely states in reply that the results at trial would

have been different had his trial counsel done a better job in a conclusory fashion. (ECF No. 354 at 14-15.) As to Wagner's trial counsel's declaration, Wagner notes that the cases the government relies on for the objective *Strickland* inquiry are out-of-circuit and distinguishable because his trial counsel admitted he was ineffective before trial even began. (*Id.*)

But the Court nonetheless again agrees with the government. And again, there is no real dispute here that Wagner's trial counsel may not have done a good job. Indeed, he himself claimed to have done a bad job. But Wagner must also show prejudice, and again all he has offered as to prejudice is a conclusory sentence, this time supported by a conclusory sentence from his counsel. (ECF Nos. 333-13 at 4-5, 354 at 14-15.) Wagner does not point to any specific information or evidence to support his and his counsel's claims that the result of trial would have been different had his counsel done a better job. (*Id.*) Thus, it is again impossible for the Court to infer that outcome of the trial may have been different if Wagner's trial counsel had done a better job.

As to Wagner's trial counsel's declaration, "[o]n the deficient performance prong, a defendant must show that his or her 'counsel's representation fell below an objective standard of reasonableness.'" *Von Tobel v. Benedetti*, 975 F.3d 849, 857 (9th Cir. 2020), *cert. denied sub nom. Tobel v. Garrett*, 141 S. Ct. 2682, 210 L. Ed. 2d 840 (2021) (citation omitted). Thus, while Wagner is correct that the authority the government relies on for the proposition that Wagner's trial counsel's attempt to 'fall on his sword' is not strictly relevant to the inquiry is out-of-circuit and thus not binding on the Court (ECF No. 354 at 14-15), it is also true that the deficient performance prong is an objective inquiry. *See Von Tobel*, 975 F.3d at 857. It must accordingly also be true that Wagner's trial counsel's declaration does not determinatively change the Court's analysis here. Wagner's trial counsel's statements in his declaration are inherently subjective.

But again, and more importantly, neither Wagner nor his counsel have made anything more than a conclusory assertion that prejudice resulted from trial counsel's poor performance. (ECF Nos. 333-13 at 4-5, 354 at 14-15.) And "the highly deferential review

courts are to give counsel's performance and the likelihood that attorney error would be harmless in a particular case make [*Strickland's* high bar] difficult to surmount." *Von Tobel*, 975 F.3d at 857-58 (citation omitted). This is because, "on the prejudice prong, it is not the requirement that the defendant show a 'reasonable probability' that makes it hard to meet; instead, it is what the defendant must show a 'reasonable probability' of— 'that, but for counsel's unprofessional errors, the result of the proceeding would have been different[.]" *Id.* at 858 (emphasis in original). That is where Wagner's argument as to his trial counsel's performance is ultimately unpersuasive. How would the result of the trial been different if Wagner's trial counsel was more effective? The Court cannot say based on Wagner's Motion, his reply, the supporting exhibits, and the Court's recollection of the trial.

Further, the government correctly points out that Wagner's trial counsel's statements in his declaration that his investigator discovered exculpatory evidence are not supported by the investigator's declaration. (ECF No. 335 at 17.) The investigator does not mention finding any exculpatory evidence and suggests she did not do much review of any documents at all. (ECF No. 333-3 at 2.) Thus, she does not corroborate Wagner's trial counsel's otherwise uncorroborated statements in his declaration that she discovered exculpatory evidence. (ECF No. 333-13 at 3.) Accordingly, Wagner's trial counsel's declaration does not help him establish the requisite prejudice under *Strickland*. The same goes for Wagner's broader argument that his trial counsel rendered generally deficient performance—the Court rejects it because Wagner has not shown prejudice.

### F.   Ground 6 – Short Discussion of Plea Agreement

Wagner finally argues that his trial counsel was ineffective under *Strickland* because he did not spend enough time explaining a plea agreement to Wagner that Wagner ultimately rejected. (ECF No. 333 at 19.) The government counters that, "Wagner's acknowledgment that his counsel provided him with the government's plea offer, the extensive details in the written offer, and Wagner's failure to articulate what he failed to understand about the offer, collectively lead to the inescapable conclusion that

11

he simply was not amenable to the proposed plea agreement." (ECF No. 335 at 19; *see also id.* at 18-19 (arguing Wagner also has not shown prejudice).) Wagner attempts to respond to the government's arguments by proffering a second declaration along with his reply. (ECF No. 354 at 15-16; *see also* ECF No. 354-3 at 3 (explaining his trial counsel's deficient explanation of the plea offer).)

But "[c]ourts do not generally consider arguments made for the first time in reply." *Brand v. Kijakazi*, Case No. 2:20-cv-02219-NJK, --- F.Supp.3d ----, 2021 WL 5868131, at *6 (D. Nev. Dec. 10, 2021) (citing *Bazuaye v. I.N.S.*, 79 F.3d 118, 120 (9th Cir. 1996)). This is normally because it is unfair to the other side who has no opportunity to respond to the new argument or evidence raised in reply. And indeed, here, the fact Wagner filed a supplemental declaration implicitly concedes that Wagner's initial declaration with his Motion was insufficient to establish prejudice. (ECF No. 333-8 at 3 (stating merely that trial counsel did not explain the offer in a way he could understand so he rejected it even though it was favorable).) Further, it is Wagner's burden to establish prejudice as to his rejection of the plea agreement. *See, e.g.*, *Lafler v. Cooper*, 566 U.S. 156, 163 (2012) ("a defendant must show the outcome of the plea process would have been different with competent advice"). Thus, the Court need not consider Wagner's second declaration.

But even considering that second declaration, Wagner has not established prejudice as to his counsel's explanation of the plea agreement to him. First, Wagner does not say he would have taken the plea deal. (ECF No. 354-3 at 3.) He instead says, "things would have gone very differently." (*Id.*) But he does not say how. This does not carry Wagner's burden, which would require him to "show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the *defendant would have accepted the plea* and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that

in fact were imposed." *Lafler*, 566 U.S. at 164 (emphasis added). Wagner has made no such showing here, even considering his second declaration.

Second, and additionally, Wagner's suggestion first proffered with his reply that things would have gone differently if his trial counsel offered a more fulsome explanation of the plea deal is rendered less persuasive by hindsight bias and the self-serving nature of his second declaration. (ECF No. 335 at 18-19 (making this argument).) *See also Strickland*, 466 U.S. at 689, ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight[.]"). Of course, Wagner may have taken a plea deal if he had known it would get him a shorter sentence than the sentence he ultimately received after going to trial, but that was not fully knowable at the time. Moreover, Wagner does not present any contemporaneous declaration, notes, or other evidence—from the time when he discussed the plea deal with his trial counsel— that would render his statements in his second declaration filed with his reply more reliable. In the absence of any such corroborating, contemporaneous evidence, coupled with the fact that Wagner does not even say today that he would have taken the plea deal, Wagner has simply not made the showing required by *Lafler*, 566 U.S. at 163-64.

## V. CERTIFICATE OF APPEALABILITY

Before Wagner can appeal the Court's decision to deny his Motion, he must obtain a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1)(B); Fed. R. App. P. 22; 9th Cir. R. 22-1; *United States v. Washington*, 653 F.3d 1057, 1059 (9th Cir. 2011). To receive such a certificate, a petitioner must make "'a substantial showing of the denial of a constitutional right' as to each issue the petitioner seeks to appeal." *Washington*, 653 F.3d at 1059 (*quoting* 28 U.S.C. § 2253(c)(2), (3)). "The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The Court determines that reasonable jurists would not find its reasoning debatable or wrong. Thus, the Court will deny a certificate of appealability.

///

## VI. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the Motion before the Court.

It is therefore ordered that Paul Wagner's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 (ECF No. 322) is denied.

It is further ordered that Paul Wagner's (counselled) motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 (ECF No. 333) is denied.

It is further ordered that a certificate of appealability is denied.

The Clerk of Court is directed to enter a separate judgment on the docket reflecting the fact that the Court denies Wagner's Motion.[6]

DATED THIS 7th Day of June 2022.

MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE

---

[6]The government moves for this (ECF No. 335 at 22), and the Court agrees it is warranted. *See Kingsbury v. United States*, 900 F.3d 1147, 1151 (9th Cir. 2018) (holding that "Rule 58's separate document requirement applies" to Section 2255 motions).

14